The Chief. Justice
delivered the opinion of the court'.
Robert Sawyer, on the 20th of April, 1780, made an entry of 2000 acres, in virtue of a military warrant, “on the side of Elkhorn, joining the lands surveyed for “Bartholomew Dandridge on the north-east side, and run“ning up the creek for quantity.”
Sawyer, in due time, caused a survey to be made on this entry, and having obtained a grant from the commonwealth, conveyed, by deed, 200 acres, part thereof to A’quilla Gilbert. For the conveyance of this 200 acres, Gilbert executed his bond to Robert Clark, who assigned the same to Robert Patterson, who assigned it to Charles Patterson.
Owings, deriving title underan adverse grant, elder than that of Sawyer, brought suit and obtained a judgment in ejectment. To stay proceedings upon which, and compel Owings to surrender the legal title, the appellees filed their *621 bill, alledging themselves, to be the heirs of Charles Patterson, and exhibited thef-hond before mentioned, with the several assignments thereon.
On a final hearing they obtained a decree in their favor, Which, at a former term of this court, was reversed, up§« the ground, that there was not in the record sufficient evidence of their being the heirs of Charles Patterson. Upon a re-examination of the case, however, we perceive pans of the record which had escaped our attention, matter which is sufficient to shew that the ground upon which the reversal was predicated cannot be sustained.
The body of the defendant’s answer was not construed ■hy the,former opinion delivered by this court to amount to a traverse or denial of the heirship of the complainants, and we still believe it cannot be so construed, nor can it indeed be construed to be an admission of the fact. But the capliuu of the answer contains a plain and express recoge nit ion of their heirship, for it purports to be the answer of tite defendant to a biil exhibited against him — uby the heirs of Charles Pailersoti,. deceased."1'' ' ■
'.Such'an explicit recognition of their heirship, in the caption of the defendant’s answer, must, ⅛The absence bf an express denial - in the body of the answer, be deemed .sufficient in itself to establish the fact. But in addition to this, the agreement between the complainants and the defendant, Owings, that the cause should be heard on its merits Between them, without having the assignors of the bond under which the complainants claim, before the court, is emiilcd to no inconsiderable weight. Their title to the bond 'might have been controverted fay the assignors, and but for the agreement between the complainant and defendant, the cause could not have been heard without having thevassignors before the court. This would have been necessary to have put an end to the controversy, and to have made it safe for the defendant to perform the decree, if any should he rendered against him. But if the assignors might have controverted the complainant’s right to the bond, they might also have admitted it,And their admission would have been conclusive evidence of the; complainant’s right; for the question in relation to the right to the bond, was a question bet ween them and the complainants, and not between the latter and the defendant, Owings, who claimed no title or interest1 in the bond. The agreement, Therefore, between the defendant and the complainants, *622 tbat the cause should be heard on-its merits between tbea^ w*1*101’1 having the assignors before the court, must be eon-sidered as a virtual admission on the part of the defendant, Owings, that the complainants had a right to the bond.
If, then, the complainants have a right to the bond, it becomes necessary to enquire, whether the entry of Sawyer, under which they claim, is valid or not; and if it is valid, to determine how it ought to be surveyed. ,
That the entry is a valid one, there can, we apprehend, be no room to doubt. The notoriety of Elkborn and Dan? dridge’s survey, the only objects called for, is indisputably established. As Dandridge’s survey lies on the south side of Elkborn, and binds on the creek, the call in Sawyer’s entry to lie “on the north side of Elkborn,” necessarily indicates the intention of the locator to adjoin that side of Dandridge which binds on the creek.
That side of Dandridge is not equal to the square of 2000 acres, the quantity contained in Sawyer’s entry. In compliance, therefore, with the call of the entry “running up the creekfor quantity,’’the survey should be made by beginning at the lower corner of Dandridge on the creek, and run with the line thereof which hinds on the creek, to the upper corner, and 1 ben extend up the creek so far that tjie whole length of (he line on the creek, when reduced to n straight line, will be equal to the side of the square of 2000 acres, and lines from each end of this line, and at right angles to its genera! course, should be extended so far as will include the quantity of 2000. To all the land in contest, which will be included in a survey thus made, and which is included in Sawyer’s patent, the complainants itave shewn themselves entitled.
The.mode of surveying the entry of Sawyer, as we have here directed, being variant from that adopted by the circuit court, and less favorable to the complainants, the decree of that, court is erroneous, and must be reversed .with costs, and the cause remanded to that court, with direction to enter a decree in conformity to the foregoing opinion, and to make such other orders and decrees as may be agreeable to law and equity.

*623

Explanatory Notes to the survey reported in the suit M'Craken's heirs vs. Bowman—page 137.
1, 2, 3, 4, represent Mercer’s military survey.
HM, a tree so marked in Mercer’s line on the road from the Stamping ground to Leestown, about half a mile below the first branch.
S, the Stamping ground: the road leads from S to HM.
5, 6, 7, 1, Bealle’s survey of 1000 acres, cornering on Mercer’s line 9, another corner in Mercer’s line claimed by no one.
4, 8, 9,10, Sanders’ 3000 acres as decreed.
M. M. M. M. M’Cracken’s Settlement and pre-emption--
*624 It is hoped it will not be considered impertinent to state, that tiré record exhibited to the court a very incorrect copy of Sanders’ entrv; which error produced some difficulty to surmount. Though the entry is at best abundantly prolix and verbose, yet it is not liable to nHthe exceptions taken to it. The true reading is — “Robert Sanders enters 3000 acres on T. W. No. Sfc. beginning at o cerner which an old line leads to, from the road which leads from the St amping ground to Lees-town, where there is HM cut on a tree where the line crosses said road about half a rffile below the first branch below the Stamping ground; thence S 20 W to the said beginning; thence S 20 W, 800 poles; thence S 70 E at right angles for quantity.” It will be per; i c-ed that the omission of the course from the tree to find the beginning might have been important to the entry: litigants should be attentive to present true copies of their title papers — the court can judge only from the exhibits.

Explanatory Notes to the case of Weathers vs. Helm—page 145.
a. a, a, a, Allen's Military survey.
a, b, b, b, b, b, Boone’s pre-emption, assignee of Yancteave.
a, c, c, c, John Breckenridge’s 1000 acre survey.
d, d, d, d, Wm Helm, 637 acres, surveyed 25th Jan 1783.
h, h, h. b, d, d, d, Joseph Helm, 1500 acres, entered 3d Feb 1783
The lines sre all to the cardinal points, and Clear creek meanders through Allen’s and Boone’s surveys.